1

2

3

4

5

6           UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
7                      AT SEATTLE

8    COGNIZANT WORLDWIDE LIMITED, *et al.*,

9                                              Case No. C19-1848-JCC-MLP
                        Plaintiffs,
10                                             REPORT AND RECOMMENDATION
            v.
11
     BARRETT BUSINESS SERVICES, INC.,
12
                        Defendant.
13

14                     **I.    INTRODUCTION**

15          This matter is before the Court on Plaintiffs Cognizant Worldwide Limited and

16   Cognizant Technology Solutions U.S. Corporation's (collectively, "Cognizant")[1] motion to

17   dismiss Defendant Barrett Business Services, Inc.'s ("BBSI") amended counterclaims pursuant

18   to Federal Rule of Civil Procedure 12(b)(6). (Mot. (Dkt. # 58).) BBSI filed an opposition (Resp.

19   (dkt. # 62)), Cognizant filed a reply (Reply (dkt. # 66)), and BBSI filed a Surreply (Surreply (dkt.

20   # 71)). The Court heard oral argument telephonically on April 23, 2020. (Dkt. # 70.) Having

21   considered the parties' arguments, submissions, the balance of the record, and the governing law,

22

23   ───────────────
     [1] KBACE, Technologies, Inc. ("KBACE"), a former subsidiary of Cognizant, merged into Cognizant in 2017. (Mot. at 3, n.2.) BBSI's amended complaint alleges both Cognizant and KBACE made the misrepresentations at issue in this matter. This Report and Recommendation therefore refers to Plaintiffs as both Cognizant and KBACE.

1  the Court recommends Cognizant's motion be granted, in part, and denied in part, and that BBSI

2  be granted leave to amend.

3  ## II.    PROCEDURAL BACKGROUND

4  Cognizant filed this action on February 22, 2019 in the United States District Court for

5  the Southern District of New York to recover fees arising out of a contract between Cognizant

6  and BBSI. Cognizant alleges that pursuant to a "Statement of Work" or "Accelerate Agreement"

7  ("SOW") between the parties, Cognizant provided specific deliverables regarding an analysis of

8  the feasibility of implementing a cloud-based software product, human capital management

9  software ("HCM Cloud"), that BBSI purchased from Oracle America, Inc. ("Oracle"). (Compl.

10  (Dkt. # 1); "SOW" (Dkt. # 68-2).) Cognizant alleges BBSI failed to pay approximately $300,000

11  in outstanding invoices for that work. (Mot. at 1.)

12  On April 29, 2019, BBSI filed a motion to dismiss for lack of venue and personal

13  jurisdiction. (Dkt. # 21.) The Southern District of New York denied BBSI's motion without

14  prejudice to renewal after conducting limited purpose discovery. (Dkt. # 33.) On November 13,

15  2019, the parties submitted a joint letter regarding their consent to transfer this action to the

16  Western District of Washington pursuant to 28 U.S.C. § 1404, and the case was transferred.

17  (Dkt. ## 34, 35.) The parties expressly reserved their arguments regarding which state law

18  applies.[2] (Dkt. # 34.)

19  BBSI submitted an answer and counterclaims on December 16, 2019 (dkt. # 47) and an

20  amended answer and counterclaims on January 6, 2020. ("Am. Countercl." or "Am. Answer"

21  (Dkt. # 54).) BBSI's amended counterclaims allege the following: (1) rescission for fraud in the

22

23  ───────────────
[2] The parties maintain their dispute regarding whether New York law or Washington law applies to this matter. (Dkt. ## 23, 26, 28.) The Court does not need to address the issue of controlling law at this time as application of either states' law would not change the analysis.

REPORT AND RECOMMENDATION - 2

inducement, failure of consideration, and frustration of purpose; (2) rescission for negligent misrepresentation, failure of consideration, and frustration of purpose; (3) rescission for innocent misrepresentation, failure of consideration, and frustration of purpose; (4) intentional misrepresentation; (5) negligent misrepresentation; (6) negligence; and (7) breach of Accelerate Agreement. (Am. Countercl. at ¶¶ 53-92.) The focus of BBSI's counterclaims is that the SOW required Cognizant to fully implement the HCM Cloud, not just conduct diagnostic work regarding the feasibility of implementation. (*Id.*) Cognizant's instant motion seeks to dismiss all of BBSI's amended counterclaims.

### III.    FACTUAL BACKGROUND

BBSI is a professional employer organization ("PEO") that establishes relationships with small and medium-sized companies to assume responsibility for their human resource functions including payroll, payroll taxes, workers' compensation coverage, and employee benefits. (Am. Countercl. at ¶ 12.) In 2017, BBSI elected to upgrade its integrated human resources and payroll system. (*Id.* at ¶ 16.) BBSI interviewed Oracle, who allegedly represented that its HCM Cloud product would best fit BBSI's requirements. (*Id.* at ¶ 20.) BBSI alleges Oracle represented that KBACE was a consulting and technology services company that specialized in cloud strategy and was both certified and experienced in Oracle's HCM Cloud product implementation. (*Id.* at ¶ 22.) Oracle purportedly advised BBSI that KBACE would need to implement the HCM Cloud. (*Id.* at ¶¶ 21, 22.)

BBSI alleges that between June 2017 and February 2018, it met with Oracle and KBACE on numerous occasions to educate them on the nature and needs of its PEO business. (*Id.* at ¶ 24.) BBSI alleges that it communicated to KBACE and Oracle that it was ignorant about Oracle's HCM Cloud product and how it would perform with BBSI's system. (*Id.* at ¶ 25.) BBSI

1    alleges both companies assured BBSI that the HCM Cloud would meet, and could be configured

2    to comply with, BBSI's needs. (*Id.* at ¶¶ 26, 28.) BBSI alleges that at a December 2017 meeting,

3    KBACE presented BBSI with pricing options for various HCM Cloud implementation packages,

4    including a package with an estimated cost range of $5,410,000 to $5,950,000. (*Id.* at ¶ 30.)

5    KBACE's presentation reflected an Accounts Payable/General Ledger "go live" date of July 29,

6    2018 and a "pilot population" and Accounts Receivable/Platform as a Service "go live" date of

7    January 7, 2019. (*Id.*)

8          Several contracts are involved in BBSI's acquisition of the HCM Cloud. BBSI first

9    entered into a Master Services Agreement ("MSA") with Cognizant in July 2017 to allow the

10   parties to develop and enter into future statements of work. (MSA (Dkt. # 68-1) at § 1.1.) The

11   parties entered into the MSA before BBSI began pursuing the HCM Cloud. (Resp. at 21.) In

12   February 2018, BBSI executed a Cloud Services Agreement ("CSA") with Oracle to purchase

13   the HCM Cloud. (Am. Countercl. at ¶ 32; CSA (Mot., Ex. 4).) BBSI alleges that it did so based

14   on the representations by Oracle and KBACE that the HCM Cloud would meet BBSI's business

15   needs. (Am. Countercl. at ¶ 32.) In March 2018, BBSI and Cognizant entered into the SOW

16   regarding the HCM Cloud, the scope of which is at issue in this matter. (*Id.* at ¶ 33.)

17         BBSI alleges that after entering into these contracts, it learned the HCM Cloud had

18   deficiencies that did not meet BBSI's specific business requirements. (Am. Countercl.  at ¶ 36.)

19   BBSI also alleges that in June 2018, KBACE representatives conceded the HCM Cloud was not

20   the correct system for BBSI and that it would need to employ the resources of its parent

21   company, Cognizant, to find a solution. (*Id.* at ¶¶ 38, 39.) Thereafter, KBACE presented BBSI

22   with a revised implementation proposal with a new cost of $33,059,274 and two-phase

23   completion dates of April 15, 2019 and May 10, 2021. (*Id.* at ¶¶ 41-42.) BBSI also hired an

1    independent consultant who confirmed the HCM Cloud was an ill-suited system for BBSI. (*Id.* at

2    ¶ 44.) As a result, BBSI informed Oracle and KBACE that it would make no further payments

3    and was rescinding its contracts. (*Id.* at ¶ 47.)

## IV.    DISCUSSION

### A.    Rule 12(b)(6) Standard

6    Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

7    theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v.*

8    *Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, BBSI's

9    counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

10   that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

11   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility if the party pleads

12   factual content that "allows the Court to draw the reasonable inference that [the opposing party]

13   is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It must contain

14   "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will

15   not do." *Twombly*, 550 U.S. at 545. The Court must accept all material allegations in the

16   counterclaims as true and construe them in the light most favorable to BBSI. *Wickland Oil*

17   *Terminals v. Asarco, Inc.*, 792 F.2d 887, 889-90 (9th Cir. 1986) (citing *North Star International*

18   *v. Arizona Corporation Commission*, 720 F.2d 578, 580 (9th Cir. 1983)). However, the "tenet

19   that a court must accept as true all of the allegations contained in a [claim] is inapplicable to

20   legal conclusions." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

21   When ruling on a motion to dismiss, a court ordinarily may not consider matters outside

22   the pleadings without converting it into a motion for summary judgment. Fed. R. Civ. P.

23   12(b)(6); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n.19 (9th

1    Cir. 1990). But a court may consider documents that are essential to the pleadings and whose

2    validity is not questioned. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir. 2001).

3    Here, the Court considers the CSA, SOW, and MSA, the contracts at issue in this action, that are

4    attached to the complaint and Cognizant's motion to dismiss. (*See* Dkt. ## 58-5, 68-1, 68-2.)

5          **B.**      **Untimely Amended Answer and Counterclaims**

6          Cognizant argues BBSI's responsive pleadings were untimely filed, without good cause,

7    and therefore should be dismissed. (Mot. at 8.) As noted above, Cognizant filed its complaint on

8    February 22, 2019 and BBSI moved to dismiss for lack of venue and personal jurisdiction on

9    April 29, 2019, after obtaining an extension that tolled the 21-day period to respond. (*Id.*) The

10    court denied BBSI's motion on July 18, 2019 without prejudice to renew after limited discovery.

11    (*Id.*)

12          Cognizant argues that after the parties consented to transferring this matter to the Western

13    District of Washington on November 14, 2019, any renewed motion to dismiss was mooted.

14    (Mot. at 8.) Cognizant further argues that even if the limited discovery period following the

15    denial of BBSI's motion to dismiss tolled the response date deadline for 14 days, this deadline

16    lapsed on November 28, 2019. (*Id.*) Cognizant asserts the filing of BBSI responsive pleading on

17    December 16, 2019 failed to meet that deadline. (Dkt. ## 47, 54.)

18          BBSI's argues its counterclaims should not be dismissed as untimely and rather decided

19    on the merits. (Resp. at 29.) BBSI asserts that at the time it filed its answer and counterclaims, no

20    Court order had established a deadline for counterclaims and Cognizant had previously agreed to

21    not move for entry of default if BBSI did not filed its responsive pleading before December 17,

22    2019. (*Id.* (citing Dkt. ## 58-2, 58-3).)

23

1    The Court finds Cognizant's argument unavailing. Cognizant has not identified any

2    prejudice in the timing of BBSI's answer. This case does not present the circumstances in *Sun*

3    *Life Assurance Co. of Canada v. O'Connor,* Cause No. C16-799-JCC (W.D. Wash. Mar. 9,

4    2017), cited by Cognizant in support of its argument. In *O'Connor*, the case had been pending

5    for over nine months without indication of whether counterclaims would be submitted or what

6    the nature of any potential claims would be. Here, the alleged delay was brief and based on the

7    history of the action, it appears the parties were aware of the general nature of the allegations

8    against each other. There is a strong policy favoring decisions on the merits when reasonably

9    possible. *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986). Accordingly, the Court

10    considers Cognizant's motion to dismiss on the merits.

11    **C.    Breach of Contract Counterclaim**

12    BBSI alleges that pursuant to the SOW, Cognizant agreed to fully implement the HCM

13    Cloud for a price of $5,410,000 to $5,950,000, plus or minus 20%, within a reasonable time

14    frame and failed to do so. (Am. Countercl. at ¶ 89.) BBSI argues the language in the SOW

15    demonstrates that the objective was to "implement a comprehensive Oracle Cloud Application to

16    support [BBSI's] needs …." (Resp. at 9 (citing SOW at 1).) BBSI further argues that the months

17    of meetings with Cognizant resulting in this pricing proposal support its assertion that the SOW

18    was for full implementation. (Resp. at 9; Am. Countercl. at ¶ 30.)

19    Cognizant counters that it only agreed to conduct diagnostic work to determine the

20    feasibility of implementing the HCM Cloud, and that any implementation work itself would have

21    required the parties to enter an additional statement of work. (Mot. at 9.) Cognizant asserts it

22    provided the specific deliverables detailed in the SOW, that BBSI accepted those deliverables,

23    and therefore BBSI fails to allege a breach of any specific provision in the SOW. (*Id.*)

1    Looking at the face of the SOW, the Court agrees with Cognizant. Under both New York

2    and Washington law, a party alleging a direct breach of contract must point to a specific

3    provision of the contract that has been breached. *See Elliott Bay Seafoods v. Port of Seattle,* 124

4    Wash. App. 5, 12 (Wash.App. Div. 1 2004); *Westchester Cty. Corr. Officers Benevolent Ass'n.,*

5    *Inc. v. Cty of Westchester,* 953 N.Y.S.2d 623, 625 (2012); *Trump on the Ocean, LLC v. State of*

6    *New York,* 913 N.Y.S.2d 792, 794 (2010).

7    The stated objective in the preamble of the SOW expressly states that BBSI was "*seeking*

8    *to implement a comprehensive Oracle Cloud Application*" and that Cognizant was to work with

9    BBSI to "lay the foundation for the Implementation phase." (SOW at 1 (emphasis added).)

10    Further, the "In-Scope Services" and "deliverables" do not include full implementation of the

11    HCM Cloud. Rather the services include tasks such as "[e]stablish a Cloud foundation and

12    Project Plan that allows for an easy transition to the Oracle Cloud implementation project" and

13    "begin system design in order to jump start the Oracle Cloud Implementation." (*Id.* at 4-6).

14    Similarly, the deliverables include an "Initial Implementation Project Plan" and "Preliminary

15    Change Management and Training Assessment." (*Id.* at 5-6.) Notably, the fee estimate in the

16    SOW is $360,468 for labor and $68,800 for travel and out of pocket expenses, not $5,410,00 to

17    $5,950,000 as asserted by BBSI for implementation. (*Id.* at 3.)

18    The Court finds BBSI has not identified a specific provision in the SOW that Cognizant

19    breached. Instead, BBSI alleges Cognizant breached terms not contained in the agreement, and,

20    in fact, the terms of the SOW contradict BBSI's allegations. The Court therefore recommends

21    BBSI's breach of SOW counterclaim be dismissed.[3]

22

23    [3] Although BBSI argues that it may present parol evidence to show the circumstances under which the
SOW was executed because the meaning of the SOW is a question of fact (Resp. at 9), it identifies no
specific ambiguous language in the SOW that would allow for parol evidence. *Grant Cty. Constructors v.*

1      **D.    Rescission Counterclaims**

2          BBSI's first, second, and third counterclaims seek rescission of the CSA and SOW based

3    on Oracle and Cognizant's alleged misrepresentations regarding the HCM Cloud's suitability.

4    (Am. Countercl. at ¶¶ 53-70.) BBSI argues it can seek rescission claims against Cognizant for

5    the CSA, an agreement to which Cognizant is not a party, because the CSA and SOW should be

6    considered a single transaction. (Resp. at 10-11.) BBSI further argues it can seek rescission of

7    the CSA because Cognizant and Oracle were partners. (*Id.*) The Court addresses each argument

8    in turn.

9              *1.    Single Transaction*

10         BBSI argues the CSA and SOW are a single transaction because it entered into the

11   agreements for the acquisition and implementation of the HCM Cloud. (Resp. at 10-11 (citing

12   *Kruger v. Horton*, 106 Wn.2d 738 (1986); *Cty. of Greene v. Chalifoux*, 6 N.Y.S.3d 763 (N.Y.

13   App. Div. 2015); *Dynamics Corp. of Am. V. Int'l Harvester Co.,* 429 F. Supp. 341 (S.D. N.Y.

14   1977)).) BBSI therefore asserts that both agreements had the same purpose and did not confer

15   any value unless each contract was properly performed. (*Id.* at 10.) Cognizant argues the CSA

16   and SOW are not a single transaction because they were executed at different times and involve

17   different parties and obligations. (Reply at 4.)

18         The Court finds BBSI failed to plausibly allege the CSA and SOW are a "single

19   transaction." BBSI and Oracle entered into the CSA on February 28, 2018 to acquire Oracle's

20   HCM Cloud product. (Am. Countercl. at ¶ 32.) Cognizant was not a party to that contract and

21   there are no allegations it was involved in the execution of the agreement. BBSI and Cognizant

22

23   _____

*E. V. Lane Corp.,* 77 Wash. 2d 110, 121 (1969) (Unless there is an ambiguity, parol evidence or proof of extrinsic circumstances to explain the meaning in arriving at the parties' intentions is inadmissible.).

1   then entered into the SOW on March 13, 2018 to lead the design of the HCM Cloud modules

2   needed to implement the HCM Cloud. (*Id.* at ¶ 33.) The SOW is a product of the MSA that

3   Cognizant and BBSI entered into previously in 2017 to enable the parties to engage in future

4   projects. (*Id.*) Oracle is not a party to either the MSA or the SOW. (*Id.*) Further, neither the terms

5   in the CSA or SOW suggest they were intended to be executed together or read together. Based

6   on the difference in time, parties, and terms in the agreements, the Court finds they should not be

7   considered a single transaction and therefore do not provide a basis to assert rescission claims

8   against Cognizant for the CSA with Oracle.

9              *2.     Partnership*

10        BBSI also argues Cognizant and Oracle were partners and therefore Cognizant is liable

11   for obligations under the partnership. (*Id.* at 10 (citing RCW 25.05.100).) In support of its

12   argument, BBSI argues Cognizant held out to be Oracle's "Cloud Premier Partner" and

13   "Platinum Level Partner for all Oracle Cloud Needs," and that KBACE representatives had the

14   name "Oracle" in their titles. (Am. Countercl. at ¶¶ 34, 38.) BBSI also alleges both entities had a

15   profit motive to induce BBSI into entering into the CSA to purchase the HCM Cloud and the

16   SOW to implement it. (*Id.* at ¶¶ 57-58.)

17        Cognizant denies any agency relationship or partnership with Oracle. (Mot. at 10-11.)

18   Cognizant also asserts RCW 25.05 is inapplicable because it defines "partnership" as "an

19   association of two or more persons to carry on as co-owners of a business in profit formed under

20   RCW 25.05.055, predecessor law, or comparable law or other jurisdiction," and there are no

21   allegations that Cognizant and Oracle are co-owners of any business registered under any

22   jurisdiction's law. (Reply at 3-4.)

23

The Court finds no legal basis asserted in the amended counterclaims to support the claim that Oracle and Cognizant were partners or agents of each other. Under New York agency law, "an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." *N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C.,* 266 F.3d 112, 122 (2d Cir. 2001) (citation omitted). "Such authority to act for a principal may be actual or apparent." *Dover Ltd. v. A.B. Watley, Inc.,* 423 F.Supp.2d 303, 318 (S.D.N.Y. 2006). The existence of actual authority "depends upon the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship." *Cromer Finance Ltd. V. Berger,* 245 F.Supp.2d 552, 560 (S.D.N.Y. 2003).

Similarly, under Washington law, an agency relationship may exist, either expressly or by implication, when one party acts at the instance of and, in some material degree, under the direction and control of another. *Matsumura v. Eilert,* 74 Wash. 2d 362, 368 (1968). Both the principal and agent must consent to the relationship. *Moss v. Vadman,* 77 Wash. 2d 396, 403 (1969). The burden of establishing the agency relationship rests upon the party asserting its existence. *Id.* Consent and control are the essential elements of the relationship. *Id.*

BBSI's only allegations regarding a potential partnership are that Oracle represented KBACE was a premier HCM Cloud implementation partner and that KBACE representatives' titles contained the name "Oracle." There are no allegations that Cognizant (or KBACE prior to the merger) and Oracle were co-owners of a business as required under RCW 25.05.125. Further, there are no allegations that either entity manifested consent for the other to act on its behalf or that either entity in fact had any control over the other.

1    Moreover, BBSI expressly agreed in the CSA that third parties are not Oracle's agents.

2    (CSA at § 17.2 ("Our business partners and other third parties, including any third parties with

3    which the services have integrations or that are retained by You to provide consulting services,

4    implementation services … are independent of Oracle and are not Oracle's agents.").) BBSI

5    asserts the CSA provides that Oracle would be liable for problems arising out of acts of a

6    business partner or third party (Resp. at 10.), however, the language cited refers to business

7    partners or third parties who are subcontractors and BBSI has not alleged Cognizant was

8    Oracle's subcontractor. (CSA at § 17.2) The Court finds BBSI has not plausibly alleged an

9    agency relationship or partnership between Cognizant and Oracle. Accordingly, the Court

10   recommends BBSI's rescission counterclaims regarding the CSA be dismissed.

11        **E.        Misrepresentations**

12        As discussed above, BBSI alleges Cognizant made misrepresentations about fully

13   implementing the HCM Cloud for a designated price and timeline. BBSI further alleges

14   Cognizant made misrepresentations about its ability to do so. BBSI alleges that during an August

15   2017 conference call, KBACE stated it had knowledge of the special requirements of PEOs and

16   was currently handling an implementation of another PEO. (Resp. at 12 (citing Am. Countercl. at

17   ¶ 23).) BBSI argues that despite KBACE's representations, BBSI later learned KBACE's only

18   work with a PEO occurred eleven years prior and did not involve the HCM Cloud. (*Id.* (citing

19   Am. Countercl. at ¶ 39).) BBSI also alleges representatives of KBACE later admitted it lacked

20   the ability to provide a PEO solution. (*Id.*) BBSI asserts that when KBACE made the

21   misrepresentations regarding its experience with PEOs, it knew they were false and that BBSI

22   would rely on them. (Am. Countercl. at ¶ 56.)

23

1    Cognizant argues BBSI's first six counterclaims for rescission and tort claims should be

2    dismissed because the alleged misrepresentations do not relate to a past or existing material fact.

3    (Mot. at 12.) The basis of Cognizant's argument is that any alleged misrepresentations it made

4    that the HCM cloud "would" best fit BBSI's business needs or "could" be implemented for the

5    alleged price and time are inactionable expressions or opinions regarding future events. (*Id.*)

6    Cognizant also argues that BBSI has not alleged the misrepresentations are untrue because

7    Cognizant, not KBACE, conducted the assessment work under the SOW and BBSI

8    acknowledges Cognizant is experienced in implementing the HCM Cloud. (Reply at 4-5.) BBSI

9    asserts the alleged misrepresentations relate to Cognizant's specific experience and expertise in

10   implementing Cloud products with PEOs and therefore relate to a past or existing material fact.

11   (Resp. at 11-15.)

12   It is the general rule that representation of opinions or predictions of something which it

13   is hoped or expected will occur in the future will not sustain an action for fraud. *See Chase*

14   *Manhattan Bank, N.A. v. Perla*, 411 N.Y.S.2d 66, 68 (1978). "To constitute actionable fraud, the

15   false representation relied upon must relate to a past or existing fact, or something equivalent

16   thereto, as distinguished from a mere estimate or expression of opinion." *Benz v. Kaderbeck,* 272

17   N.Y.S. 558 (App. Div. 1934) (quoting *Bareham & McFarland, Inc. v. Kane,* 240 N.Y.S. 123

18   (App. Div. 1930.)); *Stiley v. Block,* 130 Wash. 2d 486, 505-06, 925 P.2d 194 (1996) (promises of

19   future performance are not representations of existing fact). Claims for negligent

20   misrepresentation or innocent misrepresentation must similarly assert a misrepresentation that is

21   factual in nature, and not promissory or relating to future events. *Stern v. Satra Corp.*, 539 F.2d

22   1305, 1308 (2d. Cir. 1976); *Havens v. C. & D. Plastics, Inc.*, 124 Wash. 2d 158, 182 (1994).

23

1    With regard to misrepresentations about expertise or experience, New York and

2    Washington courts have found they can be actionable representations relating to past or existing

3    facts: *see, e.g.*, *Federal Ins. Co. v Mallardi*, 696 F.Supp 875, 881 (S.D.N.Y. 1988) ("A broker's

4    misrepresentation of his status is actionable where it goes to the investment's quality); *Marybury*

5    *Mgmt., Inc. v. Kohn,* 629 F.2d 705 (2d Cir. 1980) (trainee in brokerage firm made actionable

6    misrepresentations about his expertise by claiming that he was a stockbroker and portfolio

7    management specialist which induced plaintiffs to purchase recommended securities despite

8    misgivings about the stock); *ETM IV Special LLC v. Pedigree Cats*, Inc., C13-5044-RBL (W.D.

9    Wash. Nov. 7, 2014) (yacht builder's statement regarding being the most qualified available was

10   potentially actionable where there was evidence they had no boatbuilding experience). Other

11   courts have held these claims inactionable: *see, e.g., Hamilton Exhibition, LLC v. Imagine*

12   *Exhibitions, Inc.*, C19-1470-LLS (S.D.N.Y. June 11, 2019) (dismissing fraud claim because

13   representation that exhibition could be produced on a budget of $6 million "is a prediction of

14   future events"); *BP W. Coast Prods. LLC v. SKR Inc.*, C11-6074-MJP (W.D. Wash. Oct. 22,

15   2013) (estimation of profit margins not actionable because "[a]n estimate of what someone or

16   something will do in the future does not constitute an[] existing fact").

17   The Court finds BBSI has plausibly alleged Cognizant made misrepresentations

18   regarding a past or existing fact. While some of the misrepresentations may not be actionable as

19   they involve opinions about Cognizant's future performance in implementing the HCM Cloud,

20   BBSI does allege that KBACE overstated its past and current experience in implementing Cloud

21   products with PEOs, a misrepresentation about its then existing ability to perform. BBSI

22   plausibly alleged that it would not have entered into the SOW had it known the lack of expertise.

23   The Court notes that although BBSI acknowledges Cognizant had experience in implementing

Cloud products, *i.e.* Cognizant was a premier Oracle implementation partner, BBSI does not appear to concede Cognizant had any more experience with PEOs than KBACE. Therefore, BBSI has sufficiently alleged the representations were false. Viewing the allegations in the light most favorable to BBSI, the Court finds BBSI has plausibly alleged misrepresentations regarding past or existing facts to sustain its counterclaims.[4]

## F.    Justifiable Reliance

Cognizant argues counterclaims one through six should also be dismissed because BBSI failed to allege that it justifiably relied on Cognizant's misrepresentations about the suitability of the HCM Cloud and its ability to implement it and previously disclaimed any such reliance in the MSA prior to the execution of the SOW. (*Id.* at 14-15.)

In order to make out a claim of fraudulent inducement or fraudulent misrepresentation, a party must allege that it reasonably relied upon the alleged misrepresentation. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006); *Lawyers Title Ins. Corp. v. Baik,* 147 Wash. 2d 536, 545 (2002). Justifiable reliance means that the "reliance was reasonable under the surrounding circumstances." *Baik,* 147 Wash. 2d at 545 (quoting *ESCA Corp. v. KPMG Peat Marwick,* 135 Wash. 2d 820, 827-28 (1998)).

Cognizant argues the disclaimer and merger contained in the MSA make it clear that Cognizant would make no representations about the fitness or quality of a service, which would include Cognizant's experience. (Mot. at 15-16.) The disclaimer in Section 8.3 of the MSA states

---

[4] BBSI also argues that even if Cognizant's statements regarding its ability to implement the HCM Cloud are considered opinions or future promises, they are still actionable under *Markov v. ABC Transfer & Storage Co.*, 76 Wn.2d 388 (1996), because promises about the HCM Cloud implementation were made for the purpose of deceiving and with no intention to actually be performed. (Resp. at 14.) Because the Court finds the alleged misrepresentations concern past or existing facts, the Court need not address this argument.

1   that "except as expressly provided in Section 8.1, Cognizant does not make or give any

2   representation or warranty or condition of any kind … including any warranty of

3   merchantability, quality, or fitness for a particular purpose …." The merger in Section 12.8 of

4   the MSA states that the contract "… constitute[s] the complete and exclusive statement of the

5   agreement between the Parties and supersede[s] … all other prior or contemporaneous

6   communications between the Parties relating to the subject matter herein." Cognizant asserts that

7   based on these terms, BBSI expressly agreed, before the SOW was executed, to not rely on any

8   representations made by Cognizant. (Mot. at 16.) According to Cognizant, because the SOW is

9   "part of and incorporated into the [MSA]," the MSA's terms govern. (Reply at 8 (citing SOW at

10   1).)

11         Cognizant further argues *Hitachi Data Systems Credit Corp. v. Precision Discovery, Inc.*,

12   331 F. Supp. 3d 130 (S.D.N.Y. 2018) is dispositive of this issue. (Reply at 7.) In *Hitachi,* the

13   parties entered into a master lease agreement under which the defendant agreed to lease data

14   storage equipment from plaintiff to be identified in future negotiated schedules. 331 F. Supp. at

15   137. The plaintiff brought a breach of contract action against the defendant for failure to make

16   payments under a lease schedule executed years after the master lease agreement. *Id.* The

17   defendant countersued claiming fraudulent inducement and misrepresentation because the

18   plaintiff knowingly misrepresented the suitability of leased equipment, inducing the defendant to

19   enter into the schedule. *Id.* at 137, 145. The court dismissed the defendant's counterclaims,

20   finding that the express disclaimer in the master lease agreement specifically stated that plaintiff

21   made no representation regarding the suitability of leased equipment and therefore the defendant

22   could not have reasonably relied on such a misrepresentation. *Id.* at 148. Cognizant argues that

23

just as in *Hitachi,* the MSA's disclaimer expressly states Cognizant did not make any representations. (Reply at 7.)

Lastly, Cognizant argues BBSI cannot assert justifiable reliance because it had independent means of ascertaining if the HCM Cloud was suitable for its need before purchasing it, but failed to do so. (Reply at 10.) Cognizant asserts BBSI did just this when it hired an independent consultant after the CSA who determined the HCM Cloud would not fit BBSI's needs. (*Id.*)

BBSI argues that both Washington and New York permit its claims of reliance despite the existence of a disclaimer and merger. (Resp. at 18-19 (citing, *e.g.*, *McInnis & Co., Inc. v. W. Tractor & Equip. Co.*, 63 Wn.2d 652 (1963); *Angerosa v. White Co.*, 290 N.Y.S.2d 204 (App. Div. 4th Dept. 1936)).) Specifically, BBSI argues the MSA's general disclaimer and merger do not preclude its claims because Cognizant made the allegedly misrepresentations after the MSA was executed, which fraudulently induced BBSI to enter into the SOW. (Resp. at 20.) BBSI further argues it justifiably relied on the misrepresentations at issue because neither the SOW or the MSA contain a non-reliance clause stating BBSI would not rely on Cognizant's misrepresentations when it entered the SOW. (Resp. at 15.) Additionally, BBSI argues Cognizant's misrepresentations were peculiarly within Cognizant's knowledge and therefore BBSI can assert justifiable reliance. (Resp. at 21; Surreply at 2 (citing *PMC Aviation 2012-1 LLC v. Jet Midwest Grp. LLC*, 2016 WL 3017763, at *7 (N.Y.S.C. May 25, 2016) (noting that a "buyer's disclaimer cannot preclude a claim of justifiable reliance on the seller's misrepresentations or omissions unless (1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented or undisclosed; and (2) the alleged misrepresentations or omissions did not concern facts peculiarly within the seller's knowledge.").)

1    BBSI distinguishes *Hitachi*, arguing that in that action, both parties had knowledge of the

2    leased equipment and the disclaimer pertained specifically to the equipment that was the subject

3    of the transaction. (Surreply at 2.) Unlike *Hitachi*, BBSI alleges it was ignorant about the HCM

4    Cloud product's suitability with its business needs and that the MSA disclaimer did not contain a

5    specific reference to Cognizant's expertise and experience or the HCM Cloud. (Resp. at 18;

6    Surreply at 2.)

7    The Court finds the record insufficient to determine as a matter of law, that BBSI reliance

8    on Cognizant's alleged misrepresentations was unreasonable. Justifiability is generally a

9    question of fact. *Havens*, 124 Wash. 2d at 181; *Country World, Inc. v. Imperial Frozen Foods

10   Co.,* 589 N.Y.S.2d 81, 82 (2d Dep't 1992) ("In a fraud action, whether a party could have

11   ascertained the facts with reasonable diligence so as to negate justifiable reliance is a factual

12   question.") (citations omitted). At a minimum, questions remain regarding Cognizant's

13   knowledge and intent at the time of the alleged misrepresentations, BBSI's knowledge or lack

14   thereof, and any due diligence pursued by BBSI. The extensive caselaw cited by both parties

15   further supports that reliance is a fact intensive determination in this matter and BBSI should be

16   permitted to offer evidence in support of its claims. Accepting the allegations of the amended

17   counterclaims as true and providing BBSI the benefit of every possible favorable inference, the

18   Court finds BBSI has sufficiently pleaded that it justifiable relied on Cognizant's alleged

19   misrepresentations overstating its expertise in implementing Cloud products with PEOs.

20   **G.    Duty**

21   Cognizant argues counterclaims two, three, five, and six for negligent misrepresentation,

22   innocent misrepresentation, and negligence must be dismissed because there are no allegations

23   that Cognizant owed BBSI a specific duty of care. (Mot. at 18.) Cognizant further asserts that to

the extent BBSI argues a duty arose out of the MSA or SOW, any negligent-based tort claims are barred by the doctrines of economic loss and independent duty. (*Id.* at 19.) BBSI asserts that as an Oracle implementation partner advising BBSI about the HCM Cloud, Cognizant had a duty to not provide incorrect information. (Resp. at 23.) BBSI claims that because Cognizant knew BBSI would rely on its advice and be induced BBSI to enter into the SOW, neither doctrine bars its claims. (Resp. at 23-24.)

To establish a prima facie case of negligence, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and that the breach of such duty was the proximate cause of his or her injuries. *Gordon v. Muchnick,* 579 N.Y.S.2d 745, 745 (1992); *see also Jackson v. City of Seattle*, 158 Wash. App. 647, 651 (2010) ("Duty in a negligence action is a threshold question."). To sustain a claim sounding in negligence, both New York and Washington require a duty independent of contractual obligations. Under New York's economic loss doctrine, a party to a contract that suffers economic loss only and not personal injury, is, in most cases, limited to recovery pursuant to a claim for breach of contract and cannot recover economic or consequential damages in tort. *Archstone v. Tocci Bldg. Corp. of New Jersey, Inc.,* 956 N.Y.S.2d 496, 498 (2d Dep't 2012). The doctrine "rests on the principle that economic losses arising from injury to expectancy interests created by contract ought to be brought as contract claims." *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 159 (S.D.N.Y. 2018). "[T]he general rule under New York law is that economic loss is not recoverable under a theory of negligence or strict liability." *Computech Intern., Inc. v. Compaq Computer Corp.,* No. C02-2628-RWS, at *10 (S.D.N.Y. May 21, 2004) (internal quotation marks omitted). "[A]n exception to the economic loss doctrine exists where the defendant has a duty independent of contractual

1    obligations." *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 397 (S.D.N.Y.

2    2018) (internal quotation marks omitted).

3         With regard to Washington law, the independent duty doctrine bars tort claims related to

4    a contract that do not arise from a tort duty existing independently of the terms of the contract.

5    *Elcon Const.*, *Inc. v. Eastern Wash. Univ.*, 174 Wash. 2d 157, 165 (Wash. 2012) The

6    independent duty doctrine applies where "considerations of common sense, justice, policy, and

7    precedent in a particular set of circumstances [lead] … to the legal conclusion that the defendant

8    did not owe a duty." *Eastwood v. Horse Harbor Found.*, *Inc.,* 170 Wash.2d 380, 389, 241 (Wash.

9    2010). The Washington Supreme Court has held that the independent duty doctrine does not, as a

10   general matter, bar claims for negligent misrepresentation or fraud. *Eastwood,* 241 P.3d at 1261;

11   *Elcon,* 273 P.3d at 970. There are circumstances where the duty to avoid negligent

12   misrepresentation might arise independently of the contract where one party, through

13   misrepresentations, induces another to enter into a contractual relationship. *See, e.g., Haberman*

14   *v. Wash. Pub. Power Supply Sys.*, 109 Wash.2d 107, 163-64 (1987) (trial court erred in

15   dismissing bondholders' negligent misrepresentation claim against design engineers when the

16   engineers' statements induced the bondholders to purchase bonds issued to finance construction

17   of nuclear power plant).

18         As discussed above, BBSI has plausibly alleged Cognizant made negligent

19   misrepresentations that induced BBSI to enter the into the SOW. Because the independent duty

20   doctrine does not generally bar negligent or fraudulent misrepresentation claims, the Court

21   declines to apply the doctrine here. Although the economic loss doctrine generally precludes

22   negligence claims, there is an exception when an independent duty exists. At this stage in the

23   litigation, there is enough of a factual question regarding Cognizant's alleged misrepresentations

1  to determine whether a duty existed outside the contract. Accordingly, the Court recommends

2  Cognizant's request to dismiss counterclaims two, three, five, and six based on a lack of duty be

3  denied.[5]

4  **H.    Leave to Amend**

5  BBSI requests leave to amend should the Court find its counterclaims inadequately

6  alleged, which Cognizant opposes. (Resp. at 28; Mot. at 23.) Cognizant argues that after BBSI

7  filed its initial answer and counterclaims, the parties met and conferred about Cognizant's

8  anticipated motion to dismiss, at which time Cognizant advised BBSI of the substantive

9  arguments it would assert in its motion. (Mot. at 23.) Cognizant argues BBSI soon after amended

10  its answer and counterclaims, suggesting it did so in an effort to address Cognizant's proposed

11  arguments. (*Id.*) Cognizant argues BBSI should not be given another opportunity to assert the

12  same counterclaims. (*Id.*)

13  Rule 15(a)(1) allows a party to amend its answer once as a matter of course within 21

14  days of serving its original answer. Fed. R. Civ. P. 15(a)(1)(A), (B). "In all other cases, a party

15  may amend its pleading only with the opposing party's written consent or the court's leave."

16  Fed. R. Civ. P. 15(a)(2). Leave to amend a before trial should be "freely give[n] … when justice

17  so requires." *Id*. Factors relevant to whether leave to amend should be granted are whether the

18  moving party acted in bad faith or unduly delayed in seeking amendment, whether the opposing

19  party would be prejudiced, whether an amendment would be futile, and whether the movant

20  previously amended the pleading. *See, e.g. United States v. Corinthian Colleges*, 655 F.3d 984,

21  995 (9th Cir. 2011).The district court is afforded discretion to grant leave to amend pleadings

22

23  _____

[5] The parties also dispute whether the MSA limits BBSI's requests for consequential damages and whether BBSI can recover attorneys' fees in this matter. (Mot. at 21-22; Resp. at 25-26.) The Court need not address these arguments at this time.

1  and "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The generosity

2  in granting leave to amend is "to be applied with extreme liberality." *Eminence Capital, LLC v.*

3  *Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).

4          Here, there is no evidence of bad faith or undue delay. Although Cognizant indicates that

5  BBSI was aware of its substantive arguments against BBSI's counterclaims before it filed its

6  amended counterclaims, BBSI argues the changes related primarily to the answer, not

7  counterclaims. (Resp. at 28.) It therefore appears BBSI's opposition to Cognizant's motion to

8  dismiss was the first opportunity to substantively respond to Cognizant's arguments. Further,

9  Cognizant does not identify any prejudice it would face were the Court to grant BBSI leave to

10  amend. The Court notes the discovery deadline is not until September 2020 and trial is scheduled

11  for February 2021. The court also cannot conclude on the basis of the record before it that BBSI

12  could not re-plead its claims to cure the deficiencies identified above. The Court therefore finds

13  that leave to amend would not be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)

14  (stating that where claims are dismissed under Rule 12(b)(6), the court "should grant leave to

15  amend … unless it determines that the pleading could not possibly be cured by the allegation of

16  other facts."). Weighing the factors considered above, leave to amend is warranted.[6]

17                                    **V.      CONCLUSION**

18          The Court recommends Cognizant's motion to dismiss (dkt. # 13) be GRANTED, in part,

19  and DENIED, in part. The Court recommends BBSI's counterclaims for breach of the SOW and

20  rescission with regard to the CSA be DISMISSED and BBSI be GRANTED leave to amend. As

21  the remaining counterclaims, the Court recommends that Cognizant's motion to dismiss be

22  DENIED. A proposed order accompanies this Report and Recommendation.

23

---

[6]The parties also dispute whether the MSA bars BBSI's request for consequential damages and whether BBSI can seek attorneys' fees. The Court finds these arguments premature and declines to address them.

REPORT AND RECOMMENDATION - 22

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 22, 2020**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable John C. Coughenour.

Dated this 7th day of May, 2020.


MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23