1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COGNIZANT WORLDWIDE LIMITED, *et al.*,

               Plaintiffs,

    v.

BARRETT BUSINESS SERVICES, INC.,

               Defendant.

Case No. C19-1848-JCC-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This matter is before the Court on Plaintiff Cognizant Worldwide Limited and Cognizant Technology Solutions U.S. Corporation's (collectively, "Cognizant")[1] motion to dismiss Defendant Barrett Business Services, Inc.'s ("BBSI") second amended counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. (Dkt. # 84).) BBSI filed a response (Resp. (dkt. # 85)) and Cognizant filed a reply (Reply (dkt. # 86)). The Court heard oral argument on January 19, 2020. (Dkt. # 88.) Having considered the parties' arguments, submissions, the balance of the

---

[1] KBACE, Technologies, Inc. ("KBACE"), a former subsidiary of Cognizant, merged into Cognizant in 2017. (SAC (Dkt. # 83) at ¶ 5.) BBSI's amended complaint alleges both Cognizant and KBACE made the misrepresentations at issue in this matter. This Report and Recommendation therefore refers to Plaintiffs as both Cognizant and KBACE.

REPORT AND RECOMMENDATION - 1

record, and the governing law, the Court recommends Cognizant's motion be granted, in part, and denied in part, for the reasons discussed below.

## II.    PROCEDURAL BACKGROUND

Cognizant filed this action on February 22, 2019 in the United States District Court for the Southern District of New York to recover fees arising out of a contract between Cognizant and BBSI. Cognizant alleges that pursuant to a "Statement of Work" or "Accelerate Agreement" ("SOW") between the parties, Cognizant provided specific deliverables regarding an analysis of the feasibility of implementing a cloud-based software product, human capital management software ("HCM Cloud"), that BBSI purchased from Oracle America, Inc. ("Oracle"). (Compl. (Dkt. # 1); SOW (Dkt. # 68-2).) Cognizant alleges BBSI failed to pay approximately $300,000 in outstanding invoices for that work. (Mot. at 1.)

On November 13, 2019, the court transferred this action to the Western District of Washington pursuant to 28 U.S.C. § 1404. (Dkt. ## 34, 35.) BBSI submitted an answer and counterclaims on December 16, 2019 (dkt. # 47) and an amended answer and counterclaims on January 6, 2020 (Amend. Countercl. (dkt. # 54)). BBSI's first amended counterclaims alleged the following: (1) rescission for fraud in the inducement, failure of consideration, and frustration of purpose; (2) rescission for negligent misrepresentation, failure of consideration, and frustration of purpose; (3) rescission for innocent misrepresentation, failure of consideration, and frustration of purpose; (4) intentional misrepresentation; (5) negligent misrepresentation; (6) negligence; and (7) breach of the SOW. (*Id.* at ¶¶ 53-92.) BBSI's counterclaims alleged the SOW required Cognizant to fully implement the HCM Cloud, not just conduct diagnostic work regarding the feasibility of implementation. (*Id.*)

On January 13, 2020, Cognizant moved to dismiss BBSI's amended counterclaims. (Dkt. # 58.) The Court submitted a report and recommendation recommending BBSI's counterclaims for breach of the SOW and rescission of the CSA be dismissed and that BBSI be granted leave to amend. The Honorable John. C. Coughenour adopted the report and recommendation and granted BBSI leave to amend. (Order (Dkt. # 80).) On September 28, 2020, BBSI filed its second amended counterclaims. (*See* SAC (Dkt. # 83).) Cognizant subsequently filed a motion to dismiss BBSI's counterclaims. (*See generally* Mot.)

### III.    FACTUAL BACKGROUND

BBSI is a professional employer organization ("PEO") that establishes relationships with small and medium-sized companies to assume responsibility for their human resource functions including payroll, payroll taxes, workers' compensation coverage, and employee benefits. (SAC at ¶ 15.) In 2017, BBSI elected to upgrade its integrated human resources and payroll system. (*Id.* at ¶ 19.) BBSI interviewed Oracle, who allegedly represented that its HCM Cloud product would best fit BBSI's requirements. (*Id.* at ¶ 23.) BBSI alleges Oracle represented that KBACE was a consulting and technology services company that specialized in cloud strategy and was both certified and experienced in Oracle's HCM Cloud product implementation. (*Id.* at ¶ 25.) Oracle purportedly advised BBSI that KBACE would need to implement the HCM Cloud. (*Id.* at ¶¶ 24, 25.)

BBSI alleges that between June 2017 and February 2018, it met with Oracle and KBACE on numerous occasions to educate them on the nature and needs of its PEO business. (*Id.* at ¶ 28.) BBSI alleges it communicated to KBACE and Oracle that it was ignorant about Oracle's HCM Cloud product and how it would perform with BBSI's system. (*Id.* at ¶ 29.) BBSI alleges both companies assured BBSI that the HCM Cloud would meet, and could be configured to

1    comply with, BBSI's needs. (*Id.* at ¶¶ 30, 32.) BBSI alleges that at a December 2017 meeting,

2    KBACE presented BBSI with pricing options for various HCM Cloud implementation packages,

3    including a package with an estimated cost range of $5,410,000 to $5,950,000. (*Id.* at ¶ 37.)

4    KBACE's presentation reflected an Accounts Payable/General Ledger "go live" date of July 29,

5    2018 and a "pilot population" and Accounts Receivable/Platform as a Service "go live" date of

6    January 7, 2019. (*Id.*)

7        Several contracts are involved in BBSI's acquisition of the HCM Cloud. BBSI first

8    entered into a Master Services Agreement ("MSA") with Cognizant in July 2017 to allow the

9    parties to develop and enter into future statements of work. (MSA (Dkt. # 68-1) at § 1.1.) In

10    February 2018, BBSI executed a Cloud Services Agreement ("CSA") with Oracle to purchase

11    the HCM Cloud. (SAC at ¶ 39.) BBSI alleges that it did so based on the representations by

12    Oracle and KBACE that the HCM Cloud would meet BBSI's business needs. (*Id.*) In March

13    2018, BBSI and Cognizant entered into the SOW. (*Id.* at ¶ 40.)

14        BBSI alleges that after entering into these contracts, it learned the HCM Cloud had

15    deficiencies that did not meet BBSI's specific business requirements. (*Id.* at ¶ 50.) BBSI also

16    alleges that in June 2018, KBACE representatives conceded the HCM Cloud was not the correct

17    system for BBSI and that it would need to employ the resources of its parent company,

18    Cognizant, to find a solution. (*Id.* at ¶¶ 55, 56.) Thereafter, KBACE presented BBSI with a

19    revised implementation proposal with a new cost of $33,059,274 and two-phase completion

20    dates of April 15, 2019 and May 10, 2021. (*Id.* at ¶¶ 58, 60.) BBSI also hired an independent

21    consultant who confirmed the HCM Cloud was an ill-suited system for BBSI. (*Id.* at ¶ 62.) As a

22    result, BBSI informed Oracle and KBACE that it would make no further payments and was

23    rescinding its contracts. (*Id.* at ¶ 65.)

1    BBSI's second amended counterclaims contain additional allegations regarding the

2    relationship between Cognizant and Oracle. BBSI asserts, *inter alia*, the following: KBACE,

3    Cognizant, and Oracle were the principal, agent, subcontractor, partner, or employee of each

4    other (*id* at ¶ 6); Oracle and KBACE jointly undertook a sales campaign to sell BBSI the HCM

5    Cloud from Oracle and retain KBACE to implement the system (*id.* at ¶ 11); Oracle and KBACE

6    agreed that Oracle would receive revenue from BBSI's payments for the HCM Cloud license and

7    KBACE would receive revenue from BBSI's payments for implementation services (*id.* at ¶ 12);

8    Oracle and KBACE represented KBACE as Oracle's partner (*id.* at ¶ 13); Oracle and KBACE

9    were in discussions about the HCM Cloud configuration and workarounds to fit BBSI's needs

10   (*id.* at ¶ 34); BBSI's contracts with Oracle and KBACE were a single transaction (*id.* at ¶ 41);

11   Oracle and Cognizant insisted BBSI sign the CSA before signing the SOW (*id.* at ¶ 42); and

12   Oracle and KBACE coordinated specific terms and conditions for the CSA and SOW to present

13   to BBSI (*id.* at ¶ 79).

## IV.    DISCUSSION

### A.    Rule 12(b)(6) Standard

16          Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

17   theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v.*

18   *Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, BBSI's

19   counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

20   that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

21   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility if the party pleads

22   factual content that "allows the Court to draw the reasonable inference that [the opposing party]

23   is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). It must contain

1   "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will

2   not do." *Twombly*, 550 U.S. at 545. The Court must accept all material allegations in the

3   counterclaims as true and construe them in the light most favorable to BBSI. *Wickland Oil*

4   *Terminals v. Asarco, Inc.*, 792 F.2d 887, 889-90 (9th Cir. 1986) (citing *North Star International*

5   *v. Arizona Corporation Commission*, 720 F.2d 578, 580 (9th Cir. 1983)). However, the "tenet

6   that a court must accept as true all of the allegations contained in a [claim] is inapplicable to

7   legal conclusions." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

8          When ruling on a motion to dismiss, a court ordinarily may not consider matters outside

9   the pleadings without converting it into a motion for summary judgment. Fed. R. Civ. P.

10  12(b)(6); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n.19 (9th

11  Cir. 1990). But a court may consider documents that are essential to the pleadings and whose

12  validity is not questioned. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir. 2001).

13  Here, the Court considers the CSA, SOW, and MSA that are at issue in BBSI's second amended

14  counterclaims and whose validity is not questioned by the parties. (*See* Dkt. ## 58-5, 68-1, 68-2.)

15  **B.     Breach of Contract Counterclaim**

16         BBSI previously argued that pursuant to the SOW, Cognizant agreed to fully implement

17  the HCM Cloud for a price of $5,410,000 to $5,950,000, plus or minus 20%, within a reasonable

18  time frame and failed to do so. (Amend. Countercl. at ¶ 89.) Cognizant moved to dismiss BBSI's

19  counterclaim, arguing the SOW only required Cognizant to provide an initial diagnostic

20  assessment to advise BSSI about the feasibility of implementing the HCM Cloud. (Dkt. # 58.)

21  The Court found the terms of the SOW did not require Cognizant to fully implement the HCM

22  Cloud and dismissed BBSI's counterclaim because it failed to identify a specific provision that

23  Cognizant allegedly breached, as required by both New York and Washington law. (Report and

Recommendation at 8 (citing *Elliott Bay Seafoods v. Port of Seattle,* 124 Wash. App. 5, 12

(Wash.App. Div. 1 2004); *Westchester Cty. Corr. Officers Benevolent Ass'n., Inc. v. Cty of*

*Westchester,* 953 N.Y.S.2d 623, 625 (2012); *Trump on the Ocean, LLC v. State of New York,* 913

N.Y.S.2d 792, 794 (2010)).)

BBSI's second amended counterclaims cite to multiple provisions of the SOW that it

alleges Cognizant breached. (Resp. at 8.) Specifically, BBSI alleges Cognizant breached: (1) § I

of the SOW by failing to lead the design of Oracle Cloud modules and functional areas; (2) § IV

of the In-Scope Services of the SOW by failing to establish a Cloud foundation and project plan

to allow for an easy transition to the Oracle Cloud implementation process; and (3) § I and § IV

of the SOW by failing to address functionality gaps and failing to lead the design of the Oracle

Cloud. (*Id.* (citing SAC at ¶¶ 48, 110, 112, 115).)

In support of its argument, BBSI asserts Cognizant admitted the HCM Cloud was not the

right product for BBSI. (*Id.*) BBSI asserts that Cognizant therefore effectively admitted it had

not, and could not, design a project plan to allow for an easy transition to implement the HCM

Cloud or that it closed the identified alleged functional gaps. (*Id.* (citing SAC at ¶ 52).) BSSI

cites to a functionality spreadsheet it sent Oracle that inquired as to whether the HCM Cloud

could do, among other things, time entry and record time edits. (*Id.* (citing at SAC at ¶ 36).)

BBSI alleges that after conferring with Cognizant, Oracle represented this functionality was

available. (*Id.*) BBSI asserts that because Cognizant and Oracle were unable to follow through

with this functionality, Cognizant knew of its "shortcoming in its performance under the SOW,

and never delivered the key Oracle structures and Project Plan required by the SOW." (*Id.*)

Cognizant contends BBSI's allegations are conclusory and therefore fail to adequately

allege specific facts regarding how Cognizant breached the SOW. (Mot. at 11.) Cognizant further

1  argues BBSI failed to use mechanisms provided by the MSA and SOW that require written

2  notice of any purported deficiency and provide that if proper notice is given, the MSA provides

3  the sole and exclusive remedy for any such deficiency. (*Id.* at 12-14 (citing MSA § 8.2).)

4          Here, the Court finds that even if BBSI's allegations are sufficient to state a breach of

5  contract counterclaim, its counterclaim fails because BBSI failed to notify Cognizant of the

6  alleged deficiencies as required by both the SOW and MSA:

7          [i]f the deliverable does not conform to the description for such deliverable, [BBSI]
           shall have five (5) business days after [Cognizant's] submission of the deliverable
8          ("Acceptance Period") to give [Cognizant] written notice which shall specify the
           deficiencies in detail. . . . If you fail to provide written notice of any deficiencies
9          within the Acceptance Period, as provided above, such deliverable shall be deemed
           accepted at the end of the Acceptance Period.

10  (SOW at § II C.)

11          With respect to any Deliverable or Services, Cognizant warrants the following for
            a period of thirty (30) days following delivery of the particular Deliverable or the
12          performance of such other Services (the "Warranty Period"):

13                  8.1.1 the applicable Services rendered hereunder will be performed by
                    qualified personnel;
14
15                  8.1.2 the Services performed will substantially conform to any applicable
                    requirements set forth in the State of Work; and
16
17                  8.13 the Deliverable will materially conform to the corresponding product
                    specification set forth in the applicable Statement of Work for such
                    Deliverable.
18
19  (MSA at § 8.1.) There are no allegations in BBSI's second amended counterclaims that it

20  provided sufficient notice to Cognizant pursuant to the applicable contracts. Although BBSI

21  asserts it communicated with Cognizant daily regarding the problems BBSI identified with the

    HCM Cloud (Resp. at 10), this communication fails to meet the written notice requirements.

22          Further, the sole and exclusive remedy for any alleged deficiency provided by the MSA

23  does not include a suit for damages. The MSA provides:

REPORT AND RECOMMENDATION - 8

> In the event that any Deliverable or Service fails to conform to the foregoing warranty in any material respect, the sole and exclusive remedy of Client will be for Cognizant, at its expense, to promptly use commercially reasonable efforts to cure or correct such failure. The foregoing warranty is expressly conditioned upon (i) Client providing Cognizant with prompt written notice of any claim thereunder prior to the expiration of the applicable Warranty Period . . . .

(MSA at § 8.2.) BBSI's counterclaims do not allege Cognizant failed to use commercially reasonable efforts to cure any identified deficiency. Accordingly, the Court recommends BBSI's breach of contract counterclaim be dismissed.[2]

### C.    Rescission Counterclaims

BBSI previously argued in its counterclaim that it could seek rescission claims against Cognizant for the CSA because the CSA and SOW should be considered a single transaction. (Dkt. # 62 at 10-11.) The Court dismissed BBSI's counterclaim, finding Cognizant was not a party to the CSA, BBSI did not allege Cognizant was involved in the execution of the CSA, the CSA and SOW were entered into at different times, and neither the terms in the CSA or SOW suggest they were intended to be executed or read together. (*Id.*) BBSI again asserts the CSA and SOW were a single transaction, arguing the HCM Cloud had no value to BBSI without Cognizant's implementation of the HCM Cloud. (Resp. at 4.) BBSI's new allegations do not alter the Court's prior finding. The two contracts were entered into at different times, involve different parties, and do not reference each other. Accordingly, the Court finds the CSA and SOW were not a single transaction.

BBSI also previously argued it could seek recession of the CSA because Cognizant and Oracle were partners. (Dkt. # 62 at 10-11.) BBSI asserted Cognizant held out to be Oracle's

---

[2] The parties also disagree as to whether BBSI's breach of contract counterclaim should be dismissed because BBSI responded in its answer that BBSI signed approval for certain deliverables from Cognizant. The Court need not address this argument because BBSI failed to provide adequate written notice regarding any alleged deficiencies.

1   "Cloud Premier Partner" and "Platinum Level Partner for all Oracle Cloud Needs," and that

2   KBACE representatives had the name "Oracle" in their titles. (Amend. Countercl. at ¶¶ 34, 38.)

3   BBSI also alleged both entities had a profit motive to induce BBSI to enter into the CSA to

4   purchase the HCM Cloud and the SOW to implement it. (*Id.* at ¶¶ 57-58.) The Court previously

5   concluded BBSI failed to assert sufficient allegations that Cognizant and Oracle were partners

6   because it failed to allege they were co-owners of a business as required by RCW 25.05, or that

7   either entity manifested consent for the other to act on its behalf, or that either entity in fact had

8   any control over the other. (Report and Recommendation at 10-11 (citing, *e.g.*, *N.Y. Marine &*

9   *Gen. Ins. Co. v. Tradeline, L.L.C.,* 266 F.3d 112, 122 (2d Cir. 2001) ("an agency relationship

10  results from a manifestation of consent by one person to another that the other shall act on his

11  behalf and subject to his control, and the consent by the other to act."); *Matsumura v. Eilert,* 74

12  Wash. 2d 362, 368 (1968) (an agency relationship may exist, either expressly or by implication,

13  when one party acts at the instance of and, in some material degree, under the direction and

14  control of another)).) Further, the Court found BBSI expressly agreed in the CSA that third

15  parties are not Oracle's agents. (*Id.* at 12 (citing CSA (Dkt. # 58-5, Ex. A) at § 17.2 ("Our

16  business partners and other third parties, including any third parties with which the Services have

17  integrations or that are retained by You to provide consulting services, implementation services

18  … are independent of Oracle and are not Oracle's agents.")).)[3]

19      BBSI reasserts its rescission counterclaim, arguing the additional facts in its second

20  amended counterclaims show Cognizant and Oracle had an actual or purported partnership, an

21  agency relationship, and a joint venture. (Resp. at 2-6.) Specifically, BBSI asserts Cognizant and

22  Oracle sought to convince BBSI to purchase and implement the HCM Cloud to generate a profit.

23

---

[3] As noted by Cognizant, BBSI generally asserts Oracle and Cognizant were subcontractors of each other
(SAC at ¶ 6) but does not identify any subcontracting agreement between the two entities.

1  (*Id.* at 2-3.) In support of its argument, BBSI cites *Malnar v. Carlson*, 128 Wn.2d 521 (1996), in

2  which the court found a partnership can be established in absence of direct evidence. In that case,

3  the court denied summary judgment, relying on a sworn declaration provided under oath by an

4  individual that asserted he had a verbal partnership with the defendant regarding a piece of

5  property at issue. *Id.* at 457, 462. The court held there was an issue of credibility between the two

6  alleged partners and that the defendant failed to show there was no material dispute of fact. *Id.* at

7  462.

8         BBSI also cites RCW 25.05.135(1) to support its allegation of a purported partnership,

9  which provides that "[i]f the representation, either by the purported partner or by a person with

10 the purported partner's consent, is made in a public manner, the purported partner is liable to a

11 person who relies upon the purported partnership even if the purported partner is not aware of

12 being held out as a partner to the claimant." (Resp. at 6.) BBSI argues that Oracle publicly held

13 Cognizant out to be its partner on its website and that Cognizant used Oracle's name in the title

14 of its representatives, thereby establishing a purported partnership. (*Id.* at 6-7.)

15        Under New York agency law, "an agency relationship results from a manifestation of

16 consent by one person to another that the other shall act on his behalf and subject to his control,

17 and the consent by the other to act." *N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C.,* 266 F.3d

18 112, 122 (2d Cir. 2001) (citation omitted). "Such authority to act for a principal may be actual or

19 apparent." *Dover Ltd. v. A.B. Watley, Inc.,* 423 F.Supp.2d 303, 318 (S.D.N.Y. 2006). The

20 existence of actual authority "depends upon the actual interaction between the putative principal

21 and agent, not on any perception a third party may have of the relationship." *Cromer Finance*

22 *Ltd. V. Berger,* 245 F.Supp.2d 552, 560 (S.D.N.Y. 2003).

23

1    Under Washington law, an agency relationship may exist, either expressly or by

2    implication, when one party acts at the instance of and, in some material degree, under the

3    direction and control of another. *Matsumura v. Eilert,* 74 Wash. 2d 362, 368 (1968). Both the

4    principal and agent must consent to the relationship. *Moss v. Vadman,* 77 Wash. 2d 396, 403

5    (1969). The burden of establishing the agency relationship rests upon the party asserting its

6    existence. *Id.* Consent and control are the essential elements of the relationship. *Id.*

7    Partnership law generally applies to joint ventures as well. *Paulson v. McMillan,* 8

8    Wash.2d 295, 298 (1941). "The essential elements of a joint venture are an agreement

9    manifesting the intent of the parties to be associated as joint ventures, a contribution by the

10    coventurers to the joint undertaking (*i.e.,* a combination of property, financial resources, effort,

11    skill or knowledge), some degree of joint proprietorship and control over the enterprise, and a

12    provision for the sharing of profits and losses." *Mawere v. Landau*, 130 A.D.3d 986, 988 (N.Y.

13    App. Div. 2015) (internal quotation marks and citation omitted); *see also Adams v. Fed. Deposit

14    Ins. Corp.*, No. C10-1962-JCC, 2011 WL 13228992, at *4 (W.D. Wash. Sept. 20, 2011) ("To

15    show the existence of a joint venture, [p]laintiffs must allege an express or implied contract, a

16    common purpose, a community of interest, and an equal right to a voice and to control.").

17    Although BBSI now presents additional allegations that Cognizant and Oracle

18    coordinated the sale of the HCM Cloud and Cognizant's diagnostic work to BBSI, this

19    coordination is insufficient to allege a partnership, purported partnership, agency relationship, or

20    joint venture. As the Court previously found, there are no allegations that Cognizant and Oracle

21    co-owned a business. Rather, Oracle received revenue for the sale of the HCM Cloud pursuant to

22    the CSA and Cognizant received revenue for its diagnostic services pursuant to the SOW. This

23    matter is distinguishable from *Malnar* because here, the CSA explicitly and directly states third

1    parties are not agents of Oracle. Therefore, there is no lack of direct evidence and, in addition,

2    there is no sworn declaration regarding an alleged partnership. While BBSI alleges Cognizant

3    used Oracle's name in the titles of its representative and that Cognizant was referenced on

4    Oracle's website as a partner, these allegations fall short of showing either entity manifested

5    consent for the other to act on its behalf or had control over the other.

6        The Court also finds BBSI's reliance on RCW 25.05.135 to show a purported partnership

7    unpersuasive. RCW 25.05.135(1) provides a purported partner is "liable to a person is liable to a

8    person to whom the representation is made, if that person, relying on the representation, enters

9    into a transaction with the actual or purported partnership." As noted by Cognizant, BBSI seeks

10    rescission of the CSA, a contract between only BBSI and Oracle. Thus, even if BBSI sufficiently

11    pleaded a purported partnership, BBSI did not enter into the CSA with Cognizant and therefore

12    Cognizant is not liable under RCW 25.05.135. Accordingly, the Court recommends BBSI's

13    counterclaim be dismissed.[4]

14        **D.    Misrepresentation Counterclaims**

15        It is the general rule that representation of opinions or predictions of something which it

16    is hoped or expected will occur in the future will not sustain an action for fraud. *See Chase*

17    *Manhattan Bank, N.A. v. Perla*, 411 N.Y.S.2d 66, 68 (1978). "To constitute actionable fraud, the

18    false representation relied upon must relate to a past or existing fact, or something equivalent

19    thereto, as distinguished from a mere estimate or expression of opinion." *Benz v. Kaderbeck,* 272

20    N.Y.S. 558 (App. Div. 1934) (quoting *Bareham & McFarland, Inc. v. Kane,* 240 N.Y.S. 123

21    (App. Div. 1930.)); *Stiley v. Block,* 130 Wash. 2d 486, 505-06 (1996) (promises of future

22

23    [4] BBSI also argues it can recover amounts it paid to Oracle under the CSA even if the Court finds there
was no partnership or agency relationship. (Resp. at 7.) The Court finds this argument premature at this
stage in the litigation.

REPORT AND RECOMMENDATION - 13

1    performance are not representations of existing fact). Claims for negligent misrepresentation or

2    innocent misrepresentation must similarly assert a misrepresentation that is factual in nature, and

3    not promissory or relating to future events. *Stern v. Satra Corp.*, 539 F.2d 1305, 1308 (2d. Cir.

4    1976); *Havens v. C. & D. Plastics, Inc.*, 124 Wash. 2d 158, 182 (1994).

5         With regard to misrepresentations about expertise or experience, New York and

6    Washington courts have found they can be actionable representations relating to past or existing

7    facts. (*See, e.g.*, *Federal Ins. Co. v Mallardi*, 696 F.Supp 875, 881 (S.D.N.Y. 1988) ("A broker's

8    misrepresentation of his status is actionable where it goes to the investment's quality); *Marybury

9    Mgmt., Inc. v. Kohn,* 629 F.2d 705 (2d Cir. 1980) (trainee in brokerage firm made actionable

10   misrepresentations about his expertise by claiming that he was a stockbroker and portfolio

11   management specialist which induced plaintiffs to purchase recommended securities despite

12   misgivings about the stock); *ETM IV Special LLC v. Pedigree Cats*, Inc., C13-5044-RBL (W.D.

13   Wash. Nov. 7, 2014) (yacht builder's statement regarding being the most qualified available was

14   potentially actionable where there was evidence they had no boatbuilding experience). Other

15   courts have held these claims inactionable: *see, e.g., Hamilton Exhibition, LLC v. Imagine

16   Exhibitions, Inc.*, C19-1470-LLS (S.D.N.Y. June 11, 2019) (dismissing fraud claim because

17   representation that exhibition could be produced on a budget of $6 million "is a prediction of

18   future events"); *BP W. Coast Prods. LLC v. SKR Inc.*, C11-6074-MJP (W.D. Wash. Oct. 22,

19   2013) (estimation of profit margins not actionable because "[a]n estimate of what someone or

20   something will do in the future does not constitute an[] existing fact")).)

21         Here, the Court previously found BBSI plausibly alleged Cognizant made

22   misrepresentations by overstating its past experience in implementing the HCM Cloud with

23   PEOs. (Report and Recommendation at 14-15.) The Court found these allegations concerned a

past or existing material fact regarding Cognizant's experience at the time the representations were made. (*Id.*) The Court finds BBSI has again plausibly alleged Cognizant misrepresented its past experience with implementing the HCM Cloud for PEOs.

BBSI also argues Cognizant made misrepresentations about the functionality of the HCM Cloud for BBSI's needs. (Resp. at 13.) In its first report and recommendation, the Court declined to address this argument. The parties disagree as to whether Judge Coughenour's Order adopting the report and recommendation dismissed these counterclaims. The Court addresses BBSI's functionality misrepresentation counterclaims below.

BBSI asserts a number of arguments in support of its counterclaims. It first asserts the alleged misrepresentations are actionable because they relate to existing facts regarding the functional capabilities of the HCM Cloud. (*Id.*) Specifically, BBSI alleges that before signing the SOW, it sent Oracle a spreadsheet regarding the HCM Cloud's functionality, referenced above with regard to BBSI's breach of contract counterclaim. (*Id.*) BBSI asserts Cognizant collaborated with Oracle in answering BBSI's questions and stated the HCM Cloud could do timesheet entry and record all time edits. (*Id.*; *see also* SAC at ¶ 36.) BBSI asserts that after entering the SOW, it discovered the HCM Cloud did not have this functionality. (Resp. at 13.)

Cognizant contends any alleged misrepresentations regarding the HCM Cloud's suitability are expressions of future events and therefore are not actionable statements of existing fact, including any representation that the HCM Cloud "would" best fit BBSI's needs and "could" be implemented to meet those needs. (Reply at 6.) With regard to the spreadsheet cited by BBSI, Cognizant argues that Oracle, not Cognizant, made the alleged misrepresentations regarding functionality. (*Id.* at 7.) Cognizant also argues BBSI failed to plead with particularity

1 | pursuant to Rule 9(b) that Oracle's representations were actually false,[5] citing BBSI allegations

2 | that: "[d]uring the early stages of the implementation process, BBSI learned for the first time that

3 | . . . the HCM Cloud . . . (iv) did not have a grid-style screen for rapid time entry by either the

4 | customer or BBSI; . . . (ix) did not have the ability to enter time as a grid for a specific client's

5 | department, division, worksite location or project; (x) did not have the ability to include both

6 | positive and negative wages, deductions, and hours within an employee's time sheet entry . . . ."

7 | (*Id.* (citing SAC at ¶ 50).) Cognizant asserts BBSI's allegations are not inconsistent with the

8 | answers in the spreadsheet regarding timesheet entry and recording time edits. (*Id.*)

9 |       Here, the Court finds BBSI has sufficiently alleged that Cognizant misrepresented the

10 | HCM Cloud's functionality before entering into the SOW. Taking BBSI allegations as true,

11 | BBSI alleges that both Oracle and Cognizant conferred with each other to answer BBSI's

12 | functionality questions and represented that the HCM Cloud could already do timesheet entry

13 | and record time edits, even though it could not. Accordingly, the Court finds BBSI has

14 | sufficiently pleaded a misrepresentation related to an existing fact.

15 |       BBSI next argues that even if some of its alleged misrepresentations were opinions or

16 | future promises, they were made for the purpose of deceiving with no intention of actually being

17 | performed and are therefore actionable under *Markov v. ABC Transfer & Storage Co.*, 76 Wn.2d

18 | 388 (1996). BBSI asserts that under Washington law, a promise is actionable if a "promise is

19 | made without care or concern whether it will be kept, and the promisor knows or under the

20 | circumstances should know that the promisee will be induced to act or refrain from acting to his

21 | detriment." (Resp. at 14 (citing *Markov,* 76 Wn.2d at 396).) In *Markov*, the defendant stated he

22 |

23 | ————————————————
[5] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

REPORT AND RECOMMENDATION - 16

would renew plaintiffs' lease even though he was negotiating with another individual to sell the property. 76 Wn.2d at 396. BBSI argues that if Cognizant did not know whether the HCM Cloud would meet BBSI's needs or if it could be implemented before the parties entered the SOW, as it claims, it acted without care or concern when it continued to assure BBSI that the HCM Cloud met its needs and could be implemented. (Resp. at 14 (citing, *e.g., Ritchie Bros. Auctioneers (America) v. Suid*, No. C17-1481-MAT, 2018 U.S. Dist. LEXIS 64731, at *5, 17 (W.D. Wash. Apr. 17, 2018) (auctioneer alleged actionable misrepresentation by alleging that defendants submitted bid for heavy equipment at auction when they "lacked the intention to comply with the terms of the bidder agreements")).)

Cognizant argues the allegations in this matter are distinguishable from *Markov*. (Reply at 7-8.) Specifically, Cognizant argues that in *Markov*, the defendant made an express promise about a future action to renew the lease even though the defendant did not intend to perform that promise because it was negotiating to sell the property to someone else. (*Id.*) Cognizant argues that in this matter, BBSI merely alleges Cognizant offered opinions that the HCM Cloud would be suitable and could be implemented to meet BBSI's needs, and do not constitute promises to take future action. (*Id.* at 8.)

As discussed above, the Court finds Cognizant has alleged misrepresentations of existing fact. However, even if the alleged misrepresentations constitute opinions, the Court finds BBSI has sufficiently pleaded that Cognizant's misrepresentations were made without care or concern. BBSI has alleged that KBACE misrepresented to it that the HCM Cloud could meet BBSI's needs and be successfully implemented. For example, BBSI alleges Oracle and KBACE were in constant discussions about the HCM Cloud configuration and that in October 2017, Oracle concluded the HCM Cloud could not support BBSI's needs as a PEO. (SAC at ¶ 34.) BBSI

alleges that despite learning of this conclusion, a KBACE representative stated that KBACE would be able to do workarounds to fit BBSI's needs." (*Id.* at ¶ 35.) At this stage in the litigation, the Court finds that BBSI has alleged an actionable misrepresentation counterclaim relating to whether the HCM Cloud could meet BBSI's needs.

### E.    Justifiable Reliance

Cognizant also asserts BBSI's misrepresentation counterclaims fail because it has not alleged justifiably reliance. (Reply at 8.) In order to make out a claim of fraudulent inducement or fraudulent misrepresentation, a party must allege that it reasonably relied upon the alleged misrepresentation. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006); *Lawyers Title Ins. Corp. v. Baik*, 147 Wash. 2d 536, 545 (2002). Justifiable reliance means that the "reliance was reasonable under the surrounding circumstances." *Baik,* 147 Wash. 2d at 545 (quoting *ESCA Corp. v. KPMG Peat Marwick,* 135 Wash. 2d 820, 827-28 (1998)).

Circumstances that may preclude a claim of justifiable reliance include a party's experience and sophistication with the subject matter and the specificity of a disclaimer. *Puget Sound Nat'l Bank v. McMahon*, 330 P.2d 559, 561 (Wash. 1958); *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLV*, 10 F.Supp.3d 504, 517 (S.D.N.Y. 2014). But a disclaimer is insufficient to defeat a claim of justifiable reliance when the disclaimer is not sufficiently specific to the particular facts misrepresented, even if the relying party is a sophisticated party. *See Abrams v. Blackstone and Sons Realty Capital Corp.*, 2019 WL 8640656, (C.D. Cal. 2019). Whether reliance is justifiable is generally a question of fact. *Havens*, 876 P.2d at 447; *Country World, Inc. v. Imperial Frozen Foods Co.*, 589 N.Y.S.2d 81, 82 (2d Dep't 1992).

1        *1.    Disclaimer*

2        Cognizant reasserts its argument that BBSI cannot plead justifiable reliance on the

3    alleged misrepresentations because the MSA states Cognizant "does not make or give any

4    representation or warranty or condition of any kind . . . including any warranty of

5    merchantability, quality, or fitness for a particular purpose." (Mot. at 15-16 (citing MSA at §

6    8.3).) Cognizant cites to *Hitachi Data Systems Credit Corp. v. Precisions Discovery, Inc.*, 331 F.

7    Supp. 3d 130 (S.D.N.Y. 2018). (Reply at 8.) In *Hitachi,* the parties entered into a master lease

8    agreement under which the defendant agreed to lease data storage equipment from plaintiff to be

9    identified in future negotiated schedules. 331 F. Supp. at 137. The plaintiff brought a breach of

10   contract action against the defendant for failure to make payments under a lease schedule

11   executed years after the master lease agreement. *Id.* The defendant countersued claiming

12   fraudulent inducement and misrepresentation because the plaintiff knowingly misrepresented the

13   suitability of leased equipment, inducing the defendant to enter into the schedule. *Id.* at 137, 145.

14   The court dismissed the defendant's counterclaims, finding that the express disclaimer in the

15   master lease agreement specifically stated that plaintiff made no representation regarding the

16   suitability of leased equipment and therefore the defendant could not have reasonably relied on

17   such a misrepresentation. *Id.* at 148. Cognizant argues that similarly, the MSA's disclaimer

18   precludes BBSI from relying on any representations regarding the suitability of the HCM Cloud.

19       BBSI contends the disclaimer in the MSA does not bar its counterclaims because it lacks

20   the required specificity and the misrepresentations were peculiarly within Cognizant's

21   knowledge. (Resp. at 16 (citing *Trainum v. Rockwell Collins, Inc.*, 2017 WL 1093986, at *49

22   (S.D.N.Y. May 30, 2017) (upholding fraud claim despite presence of both disclaimer of

23   warranties and disclaimer of reliance because misrepresented facts were peculiarly within

1    defendant's knowledge)).) BBSI also argues *Hitachi* is distinguishable for several reasons. BBSI

2    asserts that the master lease agreement containing the disclaimer in *Hitachi* stated the subsequent

3    lease schedule was a separate and independent lease incorporating terms from the master lease.

4    (Resp. to Objections (Dkt. # 79) at 9.) BBSI argues that unlike in *Hitachi*, the SOW became part

5    of the MSA upon execution, and BBSI asserts all contractual obligations regarding Cognizant's

6    HCM Cloud services were induced through Cognizant's misrepresentations. (*Id.*) BBSI also

7    argues disparity in knowledge and sophistication between the parties were not factors in *Hitachi*,

8    unlike this matter. (*Id.*) BBSI further argues the disclaimer in *Hitachi* identified the leased

9    equipment and specified that the two contracts were the exclusive statement of the agreement for

10   that equipment, whereas the MSA does not refer to the HCM Cloud. (*Id.*)

11        BBSI further argues that its fraud misrepresentation claims survive under Washington

12   law despite the MSA's disclaimer, citing *McInnis & Co. v. W. Tractor & Equip. Co.*, 63 Wn.2d

13   652, 655-56 (1964), and that even when there is an agreement stating a buyer is not relying on a

14   seller's representations, it does not bar reasonable reliance as a matter of law, citing *Helenius v.*

15   *Chelius*, 131 Wn. App. 421, 442 (2005). (Resp. at 16.)

16        As the Court previously found, the disclaimer in the MSA does not preclude BBSI's

17   counterclaims that Cognizant overstated its expertise because the disclaimer does not clearly

18   disclaim liability for relying on representations of Cognizant's qualifications and experience.

19   With regard to BBSI's remaining misrepresentation counterclaims, the Court also finds BBSI has

20   alleged justifiable reliance. BBSI alleges it was ignorant as to how cloud products would work

21   with its PEO needs, that it informed Cognizant of its ignorance, and that Cognizant held itself out

22   to be an expert in implementing the HCM Cloud with PEOs. BBSI further alleges Cognizant

23   repeatedly communicated to BBSI about its abilities to successful implement the product. BBSI

alleges Cognizant was aware the HCM Cloud was ill-suited for BBSI but continued to represent to BBSI that it was suitable for its needs. Based on BBSI's allegations, it appears this information was peculiarly within Cognizant's knowledge. Further, although the MSA was entered into before discussions of the HCM Cloud began, the SOW is "part of and incorporated into the [MSA]" (SOW at 1) and BBSI alleges all contractual obligations were induced by Cognizant's alleged misrepresentations. In light of the specific allegations in this case, the Court finds *Hitachi* distinguishable.

Further, the Court finds the disclaimer's language that Cognizant does not give any representation or warranty regarding fitness or quality lacks specificity. The parties entered into the MSA in order to execute subsequent SOWs, before discussions of the HCM Cloud product. Therefore, the disclaimer makes no mention of the HCM Cloud or Cognizant's ability to implement it. The Court also finds BBSI alleges reasonable reliance on Cognizant's representations about the suitability and implementation of the HCM Cloud given the difference in the parties' experience with Cloud products. Accordingly, given the circumstances, BBSI has alleged justifiable reliance despite the MSA's disclaimer.

### 2. Due Diligence

Cognizant also argues BBSI failed to conduct due diligence before purchasing the HCM Cloud and admitted so in its second amended counterclaims by alleging it made clear to Oracle and Cognizant that it was ignorant regarding the HCM Cloud system. (Mot. at 16 (citing SAC at ¶ 29); Reply at 8 (citing *Stephenson v. Terron-Carrera*, 957 N.Y.S.2d 266 (table), No. 09-2465, 2012 WL 2400756, at *4 (N.Y. Sup. Ct. June 5, 2012) ("a fraud or fraudulent inducement claim cannot be established for lack of justifiable reliance where a party fails to conduct due diligence, ask questions, and otherwise make use of means available to verify representations.")).)

1    Cognizant argues that BBSI's alleged lack of due diligence is evidenced by its allegations that

2    after it purchased the HCM Cloud, it hired an independent consultant who determined the HCM

3    Cloud was not a good fit for BBSI's needs. (Reply at 9-10 (citing SAC at ¶¶ 61-63).) Cognizant

4    asserts BBSI therefore could have conducted this diligence prior to purchasing the HCM Cloud.

5    Cognizant also asserts this demonstrates the suitability of the HCM Cloud was not peculiarly

6    within its knowledge because BBSI could have discovered the HCM Cloud's limited

7    functionality with due diligence, as it did after it hired an independent contractor.

8        BBSI contends that it conducted months of due diligence in educating Oracle and

9    Cognizant about its functionality requirements and obtaining assurances from them that the

10   HCM Cloud had those functionalities. (Resp. at 16.) BBSI further argues that despite its due

11   diligence, it was not required to do so because Cognizant allegedly misrepresented facts that

12   were peculiarly within its knowledge.[6] (Resp. at 16-17 (citing, *e.g.*, *Jenness v. Moses Lake*

13   *Development Co*., 39 Wn.2d 151, 158 (1951) (buyers of tavern and hotel business could rescind

14   contract based on seller's misstatements about business's financial results although books were

15   purportedly made available to buyers; if "a positive, distinct, and definite representation has been

16   made," plaintiff is entitled to rely and it is "immaterial that the means of knowledge are open to

17   the complaining party")).)

18       The Court finds BBSI has alleged it conducted due diligence. BBSI alleges that over at

19   least a seven-month period, it had numerous discussions with Oracle and Cognizant about its

20

21   _____

     [6] BBSI also argues that if the Court finds its allegations are statements of opinion, they are actionable
     because Cognizant is an expert in Cloud implementation and had special knowledge regarding the

22   suitability of the HCM Cloud, and further knew BBSI relied on its representations. (Resp. at 15 (citing,
     *e.g.*, *Pickard & Anderson v. YMCA*, 500 N.Y.S.2d 874, 876 (App. Div. 1986) (YMCA could recover for

23   fraud based on architectural firm's expression of opinion about fees associated with renovation where it
     knew YMCA was relying)).) As noted above, the Court finds Cognizant possessed special knowledge
     regarding the suitability of the HCM Cloud and that BBSI relied on its representations.

needs as a PEO and was assured by multiple employees that the HCM Cloud could meet those needs. (*See* SAC at ¶¶ 29-37.) BBSI's efforts include multiple in-person meetings, numerous telephonic conferences, status calls, presentations, and exchanging of documents such as the spreadsheet regarding the HCM Cloud's functionality. The fact that BBSI later hired an independent contractor after discovering the HCM Cloud's deficiencies does not negate its prior efforts to verify the suitability of the HCM Cloud. Based on the allegations before the Court, it appears BBSI viewed Cognizant as an expert in the HCM Cloud and diligently worked with Cognizant to confirm it would work with its needs.

### 3. Assumption of Business Risk

Cognizant further argues BBSI failed to add appropriate language in the relevant contracts to protect itself from the alleged misrepresentations and thereby willingly assumed the business risk that the facts may not be as represented. (Mot. at 16.) Cognizant cites *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531 (2d Cir. 1997), in which two sophisticated bank debt traders engaged in the sale of bank debt. 108 F.3d at 1543. The deal was conducted over the phone and based on one party's representations regarding a related report who allegedly misrepresented the report's contents. *Id*. The court found that "where . . . a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without . . . inserting appropriate language in the agreement for his protection, he may truly be said to have willingly assumed the business risk that the facts may not be as represented." In coming to this conclusion, the court noted that as a

1    substantial and sophisticated professional in the bank debt market, the injured party could have

2    made review of the report a condition of closing. *Id.*

3         Cognizant also cites *Shepherd v. Whispering Pines Inc.*, 591 N.Y.S.2d 246, 249 (N.Y. App.

4    Div. 1992). In that matter, defendants purchased a campground based on representations

5    regarding revenue from operation of the campground. 591 N.Y.S.2d at 248. The income from the

6    campground was ultimately far less than represented. *Id.* The court found the defendants were

7    experienced campground operators, were aware income of the campground was "a material fact

8    about which they had received no documentation," that the prior owners had defaulted on their

9    mortgage, and that they admitted they viewed plaintiffs' representation regarding income to be a

10   guess. *Id.* at 249. The court found that under those circumstances, defendants could have

11   protected themselves by including a condition that the sale would be rescinded if that actual

12   gross income was less than represented. *Id*

13        The Court finds the circumstances of this case different than those cited by Cognizant.

14   BBSI is not sophisticated in the purchase or implementation of Cloud products, and in fact,

15   alleges it was ignorant on the subject. Unlike a sophisticated debt trader purchasing debt or

16   experienced campground operators purchasing a new campground, BBSI was inexperienced and

17   unaware that Cognizant did not have the represented experience or ability to assess and

18   implement the HCM Cloud for PEOs. Accordingly, the Court finds BBSI has sufficiently

19   pleaded justifiable reliance.

20       **F.**    **Leave to Amend**

21        Rule 15(a)(1) allows a party to amend its answer once as a matter of course within 21

22   days of serving its original answer. Fed. R. Civ. P. 15(a)(1)(A), (B). "In all other cases, a party

23   may amend its pleading only with the opposing party's written consent or the court's leave."

Fed. R. Civ. P. 15(a)(2). Leave to amend a before trial should be "freely give[n] … when justice so requires." *Id*. Factors relevant to whether leave to amend should be granted are whether the moving party acted in bad faith or unduly delayed in seeking amendment, whether the opposing party would be prejudiced, whether an amendment would be futile, and whether the movant previously amended the pleading. *See, e.g. United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).The district court is afforded discretion to grant leave to amend pleadings and "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The generosity in granting leave to amend is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).

Here, because BBSI has amended its counterclaims twice and the discovery deadline is only several months away, the Court finds leave to amend is not warranted at this time.

## V.    CONCLUSION

The Court recommends Cognizant's motion to dismiss (dkt. # 84) be GRANTED, in part, and BBSI's counterclaims for breach of the SOW and rescission with regard to the CSA be DISMISSED. The Court further recommends Cognizant's motion to dismiss BBSI's misrepresentation counterclaims be DENIED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within

**fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 15, 2021**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable John C. Coughenour.

Dated this 29th day of January, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge